IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> DOUGLAS SHIMEK, ) <br> ) <br> Defendant. ) <br> ) | Criminal Case No. 4:20cr54 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Compassionate Release (ECF No. 40) ("Motion for Compassionate Release"), the Response in Opposition by the United States (ECF No. 42), Defendant's Reply (ECF No. 43), the exhibits related to these documents, and other related filings. The Court has reviewed these documents and all exhibits, and the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

**I. BACKGROUND**

Douglas Shimek ("Defendant" or "Shimek") was charged in a six-count indictment on August 21, 2020. (ECF No. 1.) Each of the counts charged Shimek with Receipt of Child Pornography, in violation of 21 U.S.C. § 2252A(a)(2) & (b)(1). (*Id.*) On October 29, 2020, Defendant pled guilty to Count 2. (ECF Nos. 14–18.)

According to the Presentence Investigation Report ("PSR"), the statute for Count 2 required a mandatory minimum term of imprisonment of at least 5 years, and the advisory Guideline range was 97 to 121 months. (PSR, ECF No. 20 at ¶ 73.) During the sentencing hearing

on March 18, 2021, the undersigned granted Defendant's motion for a downward variance and sentenced Defendant to 66 months of imprisonment. (ECF Nos. 30–32.)

Defendant filed a request for compassionate release with the Bureau of Prisons ("BOP") on July 7, 2021. (ECF No. 33.) The Warden at Defendant's prison facility, Federal Correctional Institute ("FCI") Elkton, denied this request on July 21, 2021. (ECF No. 33-1.) On November 29, 2021, Defendant, through counsel, filed the instant Motion for Compassionate Release. The United States filed its Opposition on December 21, 2021, and Defendant filed a Reply on February 23, 2022.[1]

In his Motion, Defendant argues that compassionate release should be granted because Defendant's medical conditions "present an 'extraordinary and compelling reason' for compassionate release given the threat that COVID-19 poses to [Defendant]." (Mot. Comp. Release, ECF No. 40, at 1.) Defendant further argues that compassionate release in his case is consistent with the factors set forth in 18 U.S.C. § 3553(a) due to his history, characteristics, and rehabilitation while incarcerated. (*Id.* at 15.) The Government opposes Defendant's Motion on the grounds that Defendant has failed to establish extraordinary and compelling reasons for compassionate release, as he has failed to show particularized susceptibility to COVID-19 and a particularized risk of contracting COVID-19 at his specific prison facility, and further that the 18 U.S.C. § 3553(a) factors weigh against Defendant's release.

---

[1] Although the Reply was filed far outside of the window allotted by the Federal and Local Civil Rules, the Court will consider it out of deference to Defendant's incarcerated status and because doing so will not prejudice the Government.

## II. LEGAL STANDARD: COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT OF 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons," "upon motion of the Director of the Bureau of Prisons," or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.* Section 3582(c)(1)(A) also requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id.*

**A. "Extraordinary and Compelling" Standard**

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019). In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that "there currently exists no 'applicable policy statement'" because the Sentencing Commission has not issued a policy statement since the passage of the First Step Act. *Id.* at 281. Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release

that a defendant might raise.'" *Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Although the policy statement in U.S.S.G. § 1B1.13 is no longer binding on this Court after the Fourth Circuit's decision in *McCoy*, many courts still treat § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," though they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also United States v. Spencer*, No. 2:11cr30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family circumstances, or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)–(D). It advises that, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A).

Similarly, a defendant may be released based on age, family circumstances, or where "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age, and family circumstances]." § 1B1.13, cmt. application note 1(D). A defendant may qualify for compassionate release based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process,"

4

and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Family circumstances potentially giving rise to grounds for compassionate release include when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, cmt. application note 1(C).

While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). It is also generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021 WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted). "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and non-binding policy statements of the United States Sentencing Guidelines." *Id.* "[T]o constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious." *Id.* To establish the existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19,[2] a defendant generally must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, No.

---

[2] Shimek argues that he is at a higher risk for severe illness from COVID-19 due to two conditions: obesity and hypertension. (Mot. Comp. Release, ECF No. 40 at 1, 5–8.) He also notes his concerns regarding the more recent COVID-19 variants and his fears of post-vaccination complications related to his hypertension. (Reply, ECF No. 43 at 1, 3.)

2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

### B. 3553(a) Considerations

Even if extraordinary and compelling reasons exist for a reduction in sentence, 18 U.S.C. § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)–(2).

The Fourth Circuit provided additional guidance in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). It explained that the district court must "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances present in [the defendant's] case." *Id*. at 332. In his concurring opinion, Chief Judge Gregory made clear that the district court may not "fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence." *Id*. at 335 (Gregory, C.J., concurring). "Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing." *Id*. "If a district court's original § 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the § 3553(a) factors, then 18 U.S.C. § 3582(c)(1) would, in effect, be a nullity." *Id*. Judge Gregory notes that "[a] day in prison under the current conditions is a qualitatively different type of punishment than one day

in prison used to be," and that "[t]hese conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect." *Id*. at 336.

Courts must also consider "evidence of rehabilitation and other post-conviction conduct." *United States v. Brown*, No. 3:90cr113, 2021 WL 3206548, *2 (E.D. Va. 2021) (citing *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B))). The *Brown* decision also notes that a defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Id*. (citing 28 U.S.C. § 994(t)).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[3] U.S.S.G. § 1B1.13(2). As noted above, pursuant to *United States v. McCoy*, the policy statement is not binding, but it nevertheless provides useful guidance.

In sum, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the

---

[3] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

7

Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

### III.  ANALYSIS

Defendant filed his initial request for compassionate release with the warden of his prison facility, and the present Motion followed more than thirty days after this initial submission.  (Mot. Comp. Release, ECF No. 40, at 3–4.)  For procedural purposes, the Court will accept that the defendant has exhausted his administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  However, after a careful review of the motion, response, reply, exhibits, and other related documents, including in particular Defendant's medical records, the Court concludes that Defendant's health conditions do not support a finding of extraordinary and compelling reasons for a reduction in his sentence, and further that, even were the Court to find extraordinary and compelling reasons for compassionate release, the 3553(a) factors do not support a reduction in Defendant's sentence.

**A.  Shimek Has Not Identified Extraordinary and Compelling Reasons for Release**

To determine whether Shimek has established the existence of an "extraordinary and compelling" reason for compassionate release based on his medical profile, the Court considers whether his conditions are "terminal . . . with an end of life trajectory" or if they "substantially diminish[] the ability of the defendant to provide self-care within the environment of the correctional facility and from which [the defendant] is not expected to recover."  U.S.S.G. § 1B1.13, application note 1(A).  Further, when considering whether the COVID-19 pandemic creates extraordinary and compelling reasons for compassionate release, the Court considers whether Shimek has shown "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility."  *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4,

2020) (denying motion for compassionate release, because the defendant failed to show that his "individual conditions of confinement—as opposed to those conditions that the inmates generally are subject to—are such as to justify relief")).

The medical records indicate that Shimek has hypertension and is obese, but they also indicate that these conditions appear to be well-managed and otherwise not sufficiently troubling to Defendant to motivate him to take advantage of the preventative care and services offered by BOP. (Mot. Comp. Release, ECF No. 40 at 6; Shimek Medical Records, ECF No. 40-2 (showing Defendant to be taking Metoprolol for his hypertension); Shimek Medical Treatment Refusal, ECF No. 42-1 at 2 (showing Defendant's refusal of BOP's offered treatment for diet and exercise education and related services).) Accordingly, the Court finds that these non-terminal conditions, on their own, do not cause a substantial diminishment of Shimek's ability to provide self-care at FCI Elkton.

The Court further finds that Shimek has not shown extraordinary and compelling reasons for release as a result of the COVID-19 pandemic. Shimek argues that, due to his medical conditions, he faces increased vulnerability to COVID-19. (Mot. Comp. Rel., ECF No. 40 at 6–7). Fear arising from potential vulnerability is not the litmus test, however. *See Feiling*, 453 F. Supp. 3d at 841 ("'[T]he fear of contracting a communicable disease' proves insufficient to justify a sentence modification.") (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020). Though he cites various cases where compassionate release has been granted since the onset of the COVID-19 pandemic and various statistics about instances of COVID-19 in the prison setting, Shimek has not demonstrated that he himself has a *particularized* susceptibility to COVID-19, or that he has a particularized risk of contracting COVID-19 at his *specific* facility. *See Feiling*, 453 F. Supp. 3d at 841.

CDC guidance regarding pre-existing medical conditions and COVID-19 distinguishes between individuals with certain conditions who "*are* more likely to get very sick from COVID-19" and those whose conditions "*can* make [them] more likely to get very sick from COVID-19." *See* People with Certain Medical Conditions, CDC (last updated Jan. 26, 2023) (emphases added).[4] According to the CDC, Shimek's conditions—hypertension and obesity—belong to the latter, more speculative category. Moreover, where a defendant is receiving medical treatment to manage his medical conditions, as Shimek is for his hypertension, courts have found that these conditions do not establish a particularized susceptibility to COVID-19. *See United States v. Reid*, No. 2:02cr172, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020) (hypertension was being treated so defendant was not "particularly susceptible to COVID-19"); *Barrett v. United States*, No. 4:15cr47, 2020 WL 6206008, at *3 (E.D. Va. Oct. 22, 2020) (hypertension combined with defendant's age and medical treatment to manage his hypertension does not place him at increased risk); *McKenith v. United States*, No. 7:14cr26, 2021 WL 4527243, at *5 (E.D.N.C. Oct. 4, 2021) (compassionate release denied despite heart conditions and hypertension, where treatment for those conditions was available while defendant served his sentence); *United States v. Volious*, No. 3:17cr575, 2020 WL 5988143, at *3 (D.S.C. Oct. 8, 2020) (compassionate release denied despite potentially heightened COVID-19 risk due to heart conditions, sleep apnea, and asthma); *United States v. McKay*, No. 18CR305, 2020 WL 7398865, at *4 (D. Md. Dec. 17, 2020) (compassionate release denied despite inmate having hypertension and borderline obesity, in part due to defendant's "relatively young age" counterbalancing other COVID-19 risk factors).

---

[4] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Moreover, BOP offered Shimek a COVID-19 vaccine, which he declined. (ECF 42-1.) *See United States v. Greene*, No. 3:17cr134, 2021 WL 1969453, at *3 (E.D. Va. May 17, 2021) (finding that a defendant who "refused to be vaccinated when offered the opportunity" failed to establish a particular risk). While Defendant argues that his rejection of the vaccine was based on prison-community rumors about potential post-vaccination complications, the Court nevertheless finds that his refusal substantially undermines his assertion that extraordinary and compelling reasons exist to warrant his release. *See United States v. Romero*, 2022 WL 5250186 at *2 n.5 (D. Minn. Oct. 6, 2022) ("Regardless of his reasons for doing so, the Court is not persuaded that his health conditions and vulnerability to COVID-19 are extraordinary and compelling enough to warrant a reduction in his sentence when Romero voluntarily chooses to reject the vaccine and remain at an elevated risk of infection."); *see also United States v. Deleston*, Cr. No. 15-113, 2021 WL 1731779, *2 (S.D.N.Y. May 3, 2021) (collecting cases holding that refusing effective vaccination weighs against release).

Finally, Shimek has not demonstrated that he faces a particularized risk of contracting COVID-19 at his specific prison facility, FCI Elkton. Though Defendant cited BOP statistics showing that there had been approximately 800 positive COVID-19 tests at Elkton as of November 2021, the BOP data specifically cautions that this does not necessarily reflect the number of *individuals* who tested positive, as one individual may be tested multiple times. *See* "About the Data: COVID-19 Cases," *available at* https://www.bop.gov/coronavirus/covid19_statistics.html. Further, while Defendant points to the fact that 9 inmates died of COVID-19 at FCI Elkton as of November 2021, current BOP figures show this number remains unchanged and there are only five inmates currently positive with COVID-19, while 1,844 out of 2,048 inmates have been vaccinated. *Compare* BOP COVID-19 Statistics: FCI Elkton, *available at* https://www.bop.gov/

coronavirus/covid19_statistics.html; *with* FCI Elkton: Population Data, *available at* https://www.bop.gov/locations/institutions/elk/index.jsp. Based on these figures, the situation at FCI Elkton is clearly "improving, not deteriorating," despite Defendant's arguments about the risks posed by COVID-19 variants and risks inherent in the general prison environment, and therefore the Court finds that Shimek does not face a particularized risk of contracting COVID-19 at his facility.

Based on Shimek's failure to demonstrate particularized risk, either personal or at his facility, the Court finds that Shimek has not established an extraordinary and compelling reason for a reduction in his sentence.

**B. The 3553(a) Factors do not Support a Reduction in Defendant's Sentence**

Moreover, even if the Court found that Shimek had established an extraordinary and compelling reason for a reduction in his sentence, the Court does not, in its discretion, find a reduction in sentence to be appropriate under the relevant § 3553(a) factors and non-binding policy statements. The Court finds that a reduction in Shimek's sentence would in fact undermine the relevant § 3553(a) factors. In particular, a reduction in Shimek's sentence at this time would undermine the need for the sentence to reflect the seriousness of the offense and protect the public from a danger to the community, promote respect for the law, and afford adequate deterrence, given the nature and circumstances of the underlying offense and Shimek's history and characteristics.

Shimek was indicted on six counts of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and pled guilty to one count of the same. (ECF Nos. 1, 16.) As recited previously, the Court granted the defense's motion for downward variance at sentencing and sentenced Defendant to 66 months of imprisonment. (ECF Nos. 30–32.) Defendant's projected release date is January 16, 2026; at this time, he has served less than half his given sentence. The

Court is not persuaded that releasing Shimek now would promote respect for the law and reflect the seriousness of his offense: a multi-year pattern of behavior that, contrary to the arguments in Defendant's Reply, does implicate the sexual exploitation of children, even if Defendant was not personally involved in such exploitation and merely benefitted from it as a recipient of the resulting pornography. *See United States v. Bryant*, 2020 WL 7497805, at *6 (E.D. Va. Dec. 21, 2020) (finding that compassionate release "would not promote respect for the law" where the defendant "already received a sentence below the recommended advisory guideline range, and ha[d] over one year remaining on that sentence"); *see also United States v. Lloyd*, 2020 WL 4501811, at *3 (E.D. Va. Aug. 5, 2020) (finding, where the defendant "ha[d] served less than half of his sentence even when sentencing credits [were] considered," that "[t]he need to provide adequate deterrence for this Defendant" and "to avoid unwarranted sentencing disparities" weighed against release). Defendant's arguments that his personal history and cooperation with the Government's investigation do not outweigh the seriousness of his offense and the need to promote respect for the law.

Additionally, according to BOP records received in connection with the present Motion, Defendant has not availed himself of BOP's sex offender treatment program while in custody. In fact, he removed himself from the waitlist for such a program in February of 2022, shortly after filing his Motion for Compassionate Release. This behavior does not reflect the mindset of a person who has recognized his mistakes and accepted responsibility for his actions and the need to seek treatment. Indeed, it suggests the opposite, and does nothing to convince the Court that defendant would not pose a danger to the community if released.[5] *See, e.g., United States v.*

---

[5] Defendant's Reply brief represents that Shimek "remains committed to engaging in sex offender programming," but the Court finds such a statement disingenuous given its proffering two weeks after Defendant

*Mitchell*, 2020 WL 2770070, at *4 (E.D. Cal. May 28, 2020) (denying compassionate release in part because of the petitioner's lack of rehabilitation). Defendant's proposed release conditions also do not assuage the Court's concerns, as he would be living in the same environment in which he committed his underlying offense. *See United States v. Feiling*, 453 F.Supp.3d 832, 841–42 (E.D. Va. Apr. 10, 2020) (denying motion for compassionate release in part because the petitioner committed his offense while at home and wanted to return home to finish his sentence); *Holloman v. United States*, No. 4:14-CR-68, 2020 WL 5913994, at *3 (E.D. Va. Oct. 6, 2020) (expressing concern that defendant's "release plan does not adequately protect the public" where his plan "would have him return to his parents' home—the same location in which the initial offense occurred"). Moreover, given Shimek's proposition that he will "live with and help care for his mother" if released, (Mot. Comp. Release, ECF No. 40, at 16), the Court finds it entirely implausible that his 67-year-old mother, as someone who needs assistance and care, would serve as a check on any potential misbehavior or recidivism by Defendant. Defendant's purported "deep base of family support" is too vague to provide the Court with any idea of how this might help protect the community and prevent Shimek from re-engaging in the behavior underlying his offense of conviction. And the simple fact that Shimek would "be under the supervision of at least two law enforcement agencies" after release (Reply, ECF No. 43, at 4) is likewise insufficient reassurance that Defendant would not pose a danger to the community and be sufficiently deterred from re-offending if he were to be prematurely released. *See, e.g., Turner v. United States*, No. 2:18-cr-128, 2020 WL 4370124, at *3 (E.D. Va. July 30, 2020) ("Under the circumstances, a generalized recitation of supervision conditions for sex offenders is no substitute for a release plan

---

removed himself from the treatment program's waitlist, purportedly due to "confusion" about the logistics of such participation. (Reply, ECF No. 43, at 3.)

that proactively addresses the risk of a subsequent offense."); *see also United States v. Mitchell*, 2020 WL 2770070, at *4 ("Absent any evidence supporting defendant's rehabilitation or a detailed release plan imposing conditions to prevent the likelihood of defendant's reoffending . . . defendant has not met his burden to show releasing him to home confinement will not pose a danger to the public."). Finally, the Court does not find Shimek's promise that he has "identified a sex offender treatment program, in which he plans to enroll if released" (Mot. at 16) to be sufficiently countervailing reassurance, especially again in light of Shimek's present failure to avail himself of such treatment opportunities while incarcerated.

Accordingly, the Court holds that the § 3553(a) factors weigh strongly against release, and Defendant is not entitled to compassionate release.

### IV.  CONCLUSION

For the reasons set forth above, Shimek's Motion for Compassionate Release will be denied.

An appropriate Order shall issue.

Richmond, Virginia  
Date:  March 13, 2023

/s/ *[signature]*  
Roderick C. Young  
United States District Judge